## Spalding v. Mattingly, &c.

APPEAL FROM OLDHAM CIRCUIT COURT.

1. PLEDGE OF PROPERTY WITH POWER TO SELL.—A principal may vest his surety with the title to personal property for the purpose of selling it privately, and applying the proceeds to the payment of the debt for which he is bound as surety, the balance of the funds, if any, to be paid to the principal. Such a bill of sale does not operate as a mortgage merely, and, therefore, the intervention of a court is not necessary in order to give validity to the sale.

2. THE EQUITABLE RULE WHICH PREVENTS AN AGENT FROM DEALING

* This case has only recently been ordered to be reported.

Spalding v. Mattingly, &c.

WITH HIS PRINCIPAL'S PROPERTY FOR HIS OWN BENEFIT, inconsistent with the interest of the principal, applies only to agents who are relied upon for counsel and direction, and not to those who are employed merely as instruments in the performance of an appointed service, such as an employe to render manual labor for the principal without any power being delegated to him to act on behalf of the principal; such an employe may purchase the principal's property from any other person authorized to sell it, as if he were a stranger.

One who was employed to feed and take care of cattle had the right to purchase them for himself, on fair terms, from one who was authorized by the owner to sell them.

HILL & RIVES FOR APPELLANT.

1. The same transaction which deprived Spalding and Mattingly of the slop at B. F. Mattingly's distillery also deprived them of the means by which they might have used to advantage slop procured elsewhere in the market, so that they were prevented from purchasing elsewhere, and the effect to them is as if no slop could have been procured at all. In such cases the measure of damages should be "the profits which would be the direct and immediate fruits of the contract, and which must have been contemplated by the parties when it was entered into." (Elizabethtown, &c., R. Co. v. Pottinger, 10 Bush, 188.)

2. The so-called bill of sale is only a mortgage, as appears from the paper itself, and the mortgagee had no power to sell the property without the judgment of a court. · (Rev. Stats., chap. 80, sec. 24; Gen. Stats., chap. 63, sec. 22; Idem, chap. 21, sec. 22; Idem, p. 844.)

3. An agent will not be allowed to purchase and make profit out of the estate of the principal intrusted to his care. (C. & L. R. Co. v. Bowler's Heirs, 9 Bush, 492.)

4. Simms and Mattingly can rightfully claim no more than the amount actually expended by them, and they should account, as for profits, for all receipts on account of the transaction in excess of their expenses.

ROUNTREE & LISLE FOR APPELLEES.

1. B. F. Mattingly had the right, under the paper of July 2, 1881, to sell the stock in a reasonably prudent and discreet manner, and if he did so, he is not liable to appellant. He was the chosen agent of Mattingly and Spalding, and they cannot hold him responsible unless they show affirmatively that he acted with gross negligence and bad faith.

2. B. S. Mattingly's agency for appellant had expired when he bought the cattle, and, therefore, no reason existed why he should not make the purchase.

J. P. THOMPSON OF COUNSEL ON SAME SIDE.

Spalding v. Mattingly, &c.

JUDGE BENNETT DELIVERED THE OPINION OF THE COURT.

The appellant, Thomas B. Spalding, and the appellee, George Mattingly, were partners in the business of buying cattle and hogs, and feeding them on distillery slops. They had no means of their own to put in or run the business. The appellee, who was a man of fine credit and in good circumstances, aided them in the way of indorsing their paper in bank, whereby they were enabled to purchase and pay for the cattle and hogs purchased by them.

In the summer of 1881, said partners had a large number of cattle and hogs on hand, which had been paid for with money, amounting to several thousand dollars, borrowed from the banks by them, with appellee, B. F. Mattingly, as their indorser.

The appellee, B. F. Mattingly, desiring to be secured against loss by reason of being indorser of said partners, they, on the 2d of July, 1881, executed and delivered to him a bill of sale to all of the cattle and hogs they then owned. The bill of sale gave said Mattingly full power to sell the cattle and hogs, and apply the proceeds of sale to the payment of a note of three thousand two hundred dollars held by the Marion National Bank, and another note of seven thousand dollars held by another bank, given by said partners, with appellee, B. F. Mattingly, as surety; and if any balance remained of the proceeds of sale, after the payment of said debts, it was to be paid over to said partners.

It is contended that this bill of sale operated as a mortgage only, and, therefore, appellee, B. F. Mattingly, could not sell the property therein mentioned except by the judgment of a court having jurisdiction, although the writing gave him the power to sell.

The said firm being in debt, and said appellee being bound for the indebtedness as their surety, we can see no legal objection to the firm giving said appellee the power to sell said property for the purpose of raising the money with which to pay said indebtedness, and for that purpose vest him with the legal title. Said firm could have made the same arrangement with a stranger—a person not bound for them as surety—and no one would, we apprehend, question their legal right to do so. The fact that appellee Mattingly was their surety can make no difference in their legal right to vest him with the legal title to said property for the purpose of selling it privately, and apply the proceeds to the payment of the debts for which he was bound as their surety, and pay the balance of the proceeds, if any, after the payment of said debts, to them.

About the time of making this agreement, the hogs and some of the cattle were sold by appellant, with the consent of appellee, with the understanding between them that the proceeds of sale were to be applied to said indebtedness. The bulk of the proceeds was so applied, which reduced the bank indebtedness to the sum of about four thousand seven hundred dollars. The number of cattle remaining after said sale amounted to about one hundred and twenty; and appellee being dissatisfied because the whole proceeds of said sale were not applied to said indebtedness, as agreed, proposed to take possession of said remaining cattle, and sell them for the purpose of paying the balance of said indebtedness. About this time he discovered another note, of over eight hundred dollars, which he was on as surety

of said firm, had not been paid ; so he agreed with said firm to take possession of said cattle at his distillery, and furnish slops to feed them on during the slopping season—about one hundred and eighty days—when appellee was to sell them, and apply the proceeds of sale under the agreement of the second of July.

Appellant and appellee, B. F. Mattingly, differ about the terms of this last agreement. Appellant contends that appellee was to furnish one hundred bushels of slops per day on which to feed said cattle, at six cents per bushel, and also was to let the firm have sixty-six bushels per day besides, free of charge, in consideration of certain things to be done by the firm. Appellee contends that he was to furnish one hundred bushels per day, at six cents per bushel, on which to slop said cattle, and no more.

Appellant swears positively to his version of the contract in this particular. The appellee swears equally as positively to his version of it. Besides, he is somewhat corroborated by other testimony. The court below seemed to think that appellee's version was best sustained by the weight of the evidence. We are not prepared to say that the court's judgment was wrong in this particular.

Appellant contends that appellee, in about a month after taking possession of said cattle, in violation of his agreement, sold them, and also the slop on which they were to be fed, as well as the sixty-six bushels per day extra, to B. S. Mattingly, who bought them for the firm of Simons & Mattingly, of which firm he was a member, whereby he, appellant, was largely damaged. He also, by an amended petition, made the firm of Simons &

Mattingly defendants, and sought to hold them responsible for the value of said cattle and slops upon the ground that said B. S. Mattingly, at the time he made said purchase, was employed by him to slop and attend to said cattle, &c.

The terms of sale of said cattle to Simons & Mattingly were, that they were to pay the entire indebtedness for which said cattle were bound, and were to pay, in addition, all over six cents per pound the cattle might bring when sold by them. Appellee, B. F. Mattingly, was also to furnish one hundred bushels of slops per day on which to feed said cattle during the slopping season, and sixty-six bushels per day extra during the season, free of charge.

The appellee, B. F. Mattingly, contends that he was justified in selling the cattle at the time he did, for the reasons that, by the agreement he made with the firm of Mattingly & Spalding, they were to superintend and help erect the pens in which to confine said cattle, whereby he was to be relieved of expense and trouble. Also, they were to furnish straw or hay for said cattle at their own expense, and personally attend to and feed said cattle during the slopping season, so as not to attach any of the expenses of these things to said cattle or himself, as it was feared that said cattle would not bring enough to pay the debts on which he was liable for said firm, which agreement they violated in toto, except to work a few days on said pens and then quit, and leave him to finish them at a cost of twelve hundred dollars; and also hired B. S. Mattingly to straw and slop and attend to said cattle at the price of one hundred and ten dollars per month; and that he, B. S.

Mattingly, looked to him, B. F. Mattingly, for his pay, and also proposed to hold said cattle bound for it; that, under these circumstances and for these reasons, he sold said cattle to B. S. Mattingly upon the terms above mentioned.

As to these alleged breaches, appellant swears that there were none; his partner also comes to his relief.

Appellee, B. F. Mattingly, swears that the breaches did occur. B. S. Mattingly also swears that he was employed by appellant at the price of one hundred and ten dollars per month to straw, slop and attend to said cattle, and that he looked to the cattle and B. F. Mattingly for his pay; also that appellant and his partner only worked a few days on said pens.

The lower court again believed the appellee's side of the evidence, and we are not prepared to say that it decided against the weight of the evidence.

We are also of the opinion that appellant, having violated said contract, the appellee, B. F. Mattingly, had the right to sell said cattle when he did. Of course he was bound, in the exercise of a reasonable judgment, to make the best sale of them he could. We think the proof shows that he did.

The contention of appellant that appellee, B. S. Mattingly, is liable to him for the value of said cattle at selling time, and also for the slops, less his expenses (although appellee, B. F. Mattingly, may not be liable), because, at the time he purchased the cattle from B. F. Mattingly he was acting as appellant's agent in slopping and attending to said cattle, can not be sustained, for the reason that the equitable rule which prevents an agent from dealing with his principal's property for his

own benefit, inconsistent with the interest of that of the principal, "applies only to agents who are relied upon for counsel and direction, and whose employment is rather a trust than a service, or both, and not to those who are employed merely as instruments in the performance of an appointed service," such as an employe to render manual labor for the principal, without any trust power being delegated to him to act on behalf of the principal, but only to render some appointed labor for him for wages; then the employe may purchase the principal's property as well as any one not so situated. It would not be contended that a person merely employed by the owner of a team of horses to feed and drive them could not purchase them from any other person authorized to sell them.

Here appellee, B. S. Mattingly, was only employed to straw, slop and attend to said cattle at an agreed price, and appellee, B. F. Mattingly, having the right, under the circumstances, to sell them, B. S. Mattingly was under no equitable obligation not to buy them for himself upon fair terms.

After carefully considering the whole case, we are of the opinion that there is no reversible error in the proceedings in the court below.

The judgment is affirmed.